**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Carolyn Baker, <u>et al.</u>,            )
                                         )
                  Plaintiffs,            )  Case No. 1:05-CV-227
                                         )
      vs.                                )
                                         )
Chevron USA, Inc., <u>et al.</u>,        )
                                         )
                                         )
                  Defendants.            )

<u>O R D E R</u>

On January 10, 2012, the Court entered an order
(Doc. No. 647) granting Defendant Chevron USA, Inc.'s ("Chevron")
motion for sanctions pursuant to Rule 11 of the Federal Rules of
Civil Procedure against attorneys David Pavlik, Sandra Sommers,
Linda Lagunzad, Hunter Lundy and Rudy Soileau, Jr., and the law
firms of Brent Coon & Associates and Lundy, Lundy, Soileau &
South, L.L.P. for continuing to prosecute the claims of the
medical monitoring Plaintiffs despite the lack of evidentiary
support.  The same order directed the parties to exchange
financial information and file supplemental briefs on the award
of sanctions that the Court should order.

Chevron's supplemental brief (Doc. No. 651) requested
sanctions in the amount of $1,010,150.70, representing all of the
attorney's fees it incurred defending the claims of the medical
monitoring motion.  In the same pleading, Chevron moved the Court
to impose sanctions on Plaintiffs' counsel pursuant to 28 U.S.C.
§ 1927 and the Court's inherent powers for vexatiously

multiplying the proceedings.  The asserted grounds for this motion were the same as Chevron's Rule 11 motion.

Plaintiffs' counsel's supplemental brief (Doc. No. 655) argued that the Court should only impose an amount of sanctions equal to the amount of attorney's fees Chevron incurred between August 2010 and December 7, 2010.  This amount, according to counsel, is $119,225.35.  There are several bases advanced by counsel to support a sanction of this amount, but the principal argument is that counsel conceded in August 2010 that the medical monitoring claims were without evidentiary support and that Chevron failed to mitigate its damages by failing to promptly move for summary judgment based on counsel's concession.

By order of the Court, Plaintiffs' counsel filed supplemental financial statements setting forth more clearly their ability to pay sanctions.  Doc. Nos. 661-668.

Accordingly, the record on the amount of sanctions the Court should impose is now complete.

As stated in the Court's prior order, the primary emphasis of Rule 11 sanctions is deterrence with compensation also being an important consideration.  <u>Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor</u>, 875 F.2d 1224, 1229 (6th Cir. 1989).  Under Rule 11, the district court should impose the least severe sanction that will result in deterrence, taking into consideration the promptness with which the Rule 11 motion was

filed and the offending attorney's ability to pay.  <u>Id.</u>  Similar

to Rule 11, the purpose of sanctions under 28 U.S.C. § 1927 is to

"deter dilatory litigation practices and to punish aggressive

tactics that far exceed zealous advocacy."  <u>Red Carpet Studios</u>

<u>Div. of Source Advantage, Inc. v. Sater</u>, 465 F.3d 642, 646 (6th

Cir. 2006).  Sanctions under § 1927 may be warranted where an

attorney files and prosecutes claims lacking a good faith basis

in fact and law.  <u>Garner v. Cuyahoga County Juvenile Ct.</u>, 554

F.3d 624, 645 (6th Cir. 2009).  In imposing sanctions under §

1927, the district court may also take into consideration the

attorney's ability to pay.  <u>Id.</u> at 646.  A district court may

decline to rule on a motion for sanctions under § 1927 where the

relief granted would be coterminous with Rule 11 sanctions.

<u>Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.</u>, 88 F.3d

368, 375 (6th Cir. 1996).  In this case, the basis for Chevron's

§ 1927 motion for sanctions is the same as its Rule 11 motion for

sanctions.  Doc. No. 651, at 14.  Accordingly, the Court

concludes that Chevron's motion for sanctions pursuant to 28

U.S.C. § 1927 is **MOOT.**

    In arriving at an appropriate amount of sanctions in

this case, the Court first considers and rejects Plaintiffs'

contention that Chevron failed to mitigate its attorney's fees by

not moving for summary judgment on the medical monitoring claims

earlier in the proceedings.  Plaintiffs' position now is that

they disagreed with the Court's statement in the August 2010 discovery conference that they needed to produce individualized evidence of general and specific causation, but acknowledged that they would be unable to adduce such evidence to support the medical monitoring claims. Counsel now claim that they "threw in the towel" during this meeting and, after this point, were simply looking for an expeditious way to appeal the Court's ruling on the proof they needed to establish a medical monitoring claim. Counsel argue that dismissing the medical monitoring claims after being served with Chevron's letter would have resulted in a waiver of their clients' appellate rights. Counsel argue further that Chevron's goal was to coerce them into waiving an appeal by threatening to run up its attorney's fees. Counsel argue, therefore, that Chevron forced them into an untenable position in which they would either be compelled to waive their clients' appellate rights or risk a large sanctions award. Under these circumstances, counsel argue that they were ethically obligated to continuing prosecuting the medical monitoring claims. On the other hand, counsel contends that Chevron, knowing that they conceded that the medical monitoring claims were subject to dismissal based on their alleged concession, should have moved for summary judgment no later than December 2010, when it tendered its Rule 11 safe harbor letter to counsel.

While it is true, as counsel argues, that the moving party must mitigate its expenses by not wasting time and effort on frivolous lawsuits, Danvers v. Danvers, 959 F.2d 601, 605 (6th Cir. 1992), their contention that they "threw in the towel" in August 2010 and that Chevron needlessly ran up its own expenses is disingenuous at best. "Throwing in the towel" is a conspicuous signal to the referee to stop the fight, but counsel gave no such alert to the Court, or Chevron, in this case. Indeed, as Chevron points out in its reply brief, counsel's actions were quite the opposite. Through late 2010 and into 2011, counsel continued to assert that there was a factual basis for the medical monitoring claims, including new evidence of contamination points in Hooven and expert testimony which supposedly supported the need for medical monitoring. See Doc. No. 659, at 6-7 (collecting record citations). Counsel never sought assistance from the Court to help them out of the conundrum that Chevron supposedly forced them into. As Chevron also correctly observes, counsel could have preserved their clients' appellate rights by seeking a formal order of dismissal from the Court on the grounds that they could not prevail on the medical monitoring claims under the general and specific causation requirements set forth by the Court. Raceway Prop., Inc. v. Emprise Corp., 613 F.2d 656, 657 (6th Cir. 1980). The Court rejects counsel's contention that Chevron's actions forced

them to play a bad hand and that, therefore, Chevron unnecessarily incurred its attorney's fees.

Having said that, however, on review of the financial information provided, the Court is persuaded that counsel, even collectively, are unable to pay sanctions in the amount requested by Chevron. The financial data reflects that most of the attorneys have modest incomes and assets. The law firm Brent Coon & Associates reports substantial net operating losses for the past three years. Doc. No. 657-3, at 1. Hunter, Hunter, Lundy & Soileau, L.L.P. reported a profit for 2011, but a substantial loss for 2010, and negative partners' capital as of December 31, 2011. Doc. No. 668, at 16-17; see also Doc. No. 657-1, at 1 (reporting net loss for equity partners in 2011).

Taking into consideration counsel's ability to pay sanctions and the need to further deterrence, the most significant consideration, the Court concludes that Plaintiffs' counsel (and not Plaintiffs themselves) should pay Chevron sanctions in the amount of $250,000. Liability for the award of sanctions shall be joint and several among the attorneys and the law firms. While representing only about 25% of the attorney's fees expended by Chevron, a $250,000 sanction is nevertheless a substantial monetary penalty. This amount will have a substantial deterrent effect on these lawyers in light of their financial situations and, the Court believes, it will effectively

promote general deterrence since very few attorneys, no matter how well off, will want to run the risk of incurring such a penalty under similar circumstances. Moreover, the mere fact that the Court sanctioned counsel, carrying with it as it does the blemish on an attorney's professional reputation, will also have a deterrent effect on other lawyers.

Accordingly, for all of the reasons stated, the Court awards Chevron Rule 11 sanctions in the amount of $250,000.

**IT IS SO ORDERED**

Date July 9, 2012          s/Sandra S. Beckwith
                          Sandra S. Beckwith
                    Senior United States District Judge